**COMPAGNIE DE SAINT-GOBAIN,**
Appellant,

v.

**Edward J. BRENNER, Commissioner of Patents, Appellee.**

No. 20255.

United States Court of Appeals
District of Columbia Circuit.

Argued March 15, 1967.

Decided Oct. 23, 1967.

Mr. John L. Seymour, New York City, for appellant. Mr. Earl L. Tyner, also entered an appearance for appellant.

---

* Circuit Judge Fahy became Senior Circuit Judge April 13, 1967.

Mr. S. Wm. Cochran, Atty., U. S. Patent Office, with whom Mr. Joseph Schimmel, Sol., U. S. Patent Office, was on the brief, for appellee.

Before BAZELON, Chief Judge, and FAHY * and DANAHER, Circuit Judges.

FAHY, Circuit Judge:

Appellant, as assignee of Guy Bach's invention,[1] applied for a patent which was rejected by the Patent Office on grounds of (1) indefiniteness of the claims, 35 U.S.C. § 112; (2) insufficiency of specification disclosures, 35 U.S.C. § 112; and (3) obviousness, 35 U.S.C. § 103. A trial *de novo* in the District Court resulted in rejection of appellant's application on the basis of obviousness. We affirm.

During oral argument in this court appellant conceded that we need pass only upon claims one and twelve of the application. Claim one states that the invention is,

> A *panfocal* lens made of transparent refringent material having an index of refraction of $n$, the lens having a first and second main face, both such faces being *surfaces of revolution,* the first face having a meridian whose curvature varies in a continuous manner, said first face having *constant astigmatism* in at least one region of substantial area of its surface. [Italics supplied except as to $n$.]

Claim twelve restates claim one and adds the following:

> said second face having a constant astigmatism in at least one region of substantial area of its surface which confronts and is aligned with said one region of the first face.

The italicized elements in combination are said to constitute invention.

A panfocal lens has a focusing power which progressively increases from the top of the lens to its bottom. One looking through such a lens can let his eye scan from the top to the bottom and

---

1. We use the term "invention" as a convenient way of referring to the subject matter of the Bach application.

somewhere within this range pick out a focusing power which clearly delineates the object to be observed. By itself this concept is not new. But Bach asserts that previously such a lens could not be mass-produced by methods presently employed in the industry, which require that a lens surface be a surface of revolution, that is, "a surface generated by revolving a plane curve about a line lying in its plane." For our purpose a surface of revolution may be thought of as a curvature which may be ground by rotary lens grinders.

A critical aspect of Bach's invention is the use of "constant astigmatism," claimed to permit production of a panfocal lens by rotary lens grinders. Astigmatism is a defect on the surface of the eye or of a lens in consequence of which rays of light from an external point are not brought to a single focal point, thus causing imperfect vision or image. Astigmatism of the eye can be corrected by altering the curvature of a spectacle lens. Such lens is then astigmatic to a normal eye, but for the user the astigmatism of the spectacle is equal and opposite to the astigmatism of his eye, with the result that his vision is stigmatic, that is, free of astigmatism. Hence, one normally would avoid the addition of astigmatism to glasses unless for the purpose of correcting astigmatism of the eye, but Bach added astigmatism to the front surface of his panfocal lens so as to make it a surface of revolution, and then cancelled out the effect of this astigmatism by astigmatism added to the back surface of the lens. The astigmatism added to the front surface necessarily had to be "constant" in order that the offsetting amount on the rear surface could be ascertained and added as a surface of revolution.[2]

The Patent Office examiner, in rejecting, under 35 U.S.C. § 103, the claim of invention as obvious in view of the prior art, relied *inter alia* upon the French patent to Jeffree, No. 1,112,429, which corresponds to the British patent to Jeffree, No. 775,007. The Board of Appeals affirmed the examiner, including his decision on obviousness by reason of the prior art. In the action under 35 U.S.C. § 145 which followed and was tried there, the District Court, while disagreeing with the Patent Office in other respects, agreed on the issue of obviousness. On this issue the court stated that it considered the Jeffree patent the most pertinent of the cited references. After describing this reference the court found that the differences between Bach's invention and the prior art, particularly the Jeffree French patent, "would have been obvious at the time the Bach invention was made * * * to a person having ordinary skill in the art of making optical lenses. Therefore, the Court holds that the claimed subject matter of the application in suit is unpatentable under 35 U.S.C. § 103."

Jeffree's lens, like Bach's, is panfocal. Appellant's contention that Jeffree's lens is made by casting and cannot be manufactured by rotary lens-grinding because its surfaces are not surfaces of revolution is contrary to the findings of both the Patent Office and the District Court. Jeffree's claim states, "The simplest lenses according to this invention are those wherein both surfaces are surfaces of revolution." There was testimony on behalf of appellant that Jeffree contemplated manufacturing by molding, but the full statement of Jeffree in this regard (British patent) reads: "Lenses according to this invention are conveniently made by moulding in transparent plastic material, and may also be made by grinding and machining processes of known type, in glass, plastics or other material."

■ The Patent Office examiner found that Jeffree's patent teaches "a continuously variable multifocal lens surface of revolution to which has been added or composited a second surface having constant astigmatism (cylinder lens) and the resulting composite surface is considered to satisfy the constant astigmatic

---

**2.** As stated elsewhere than in claims one and twelve astigmatism is added in the second surface to correct an eye defect.

lens surface as defined in these claims." The District Court found, "Jeffree anticipates one major element of plaintiff's claims, i. e., that *both* surfaces are surfaces of revolution as shown by the following excerpt: 'The simplest lenses according to this invention are those wherein both surfaces are surfaces of revolution * * *.' " This, the most critical finding in the case, conforming with that of the examiner, is not clearly erroneous, and therefore should be accepted by this court. Zenith Radio Corp. v. Ladd, 114 U.S.App.D.C. 54, 310 F.2d 859; Standard Oil Development Co. v. Marzall, 86 U.S.App.D.C. 210, 214, 181 F.2d 280, 284; Hays v. Brenner, 123 U.S.App.D.C. 96, 357 F.2d 287.

As to whether Jeffree anticipated Bach's use of constant astigmatism, we observe that the addition of constant astigmatism to the front surface of a lens is merely the change of the degree of its horizontal curvature. As to the addition of constant astigmatism to the rear surface, this is merely the change of degree of horizontal curvature in an amount opposite to the change on the front surface. Such a process seems more primitive than Jeffree's. He could grind a lens so that the horizontal curvature matched the vertical curvature. He was not obliged to bring about this match by positing a desired horizontal curvature and then grinding two offsetting curvatures. The Patent Office examiner reasonably concluded on this point: "[N]o significant or patentable improvement is seen to reside in selecting a constant difference in curve values, as compared to matching the curved values." It seems also reasonable for him to have concluded that on the basis of Jeffree's invention Bach's method of achieving the same result as did Jeffree was obvious to one skilled in the art.

Appellant contends, however, that the trial judge (1) failed to make specific findings of fact and conclusions of law, and (2) misunderstood the nature of appellant's invention. As to the latter, it is understandable that in the course of the proceedings the trial judge might not at all stages have fully understood the nature of appellant's invention. But we are satisfied that in the end the judge did understand. This is shown by his statement in his opinion that a panfocal lens could be employed, as in Bach, for purposes other than the correction of astigmatism of the eye, and that Bach and Jeffree had each designed panfocal lenses which were stigmatic. The judge had previously said that he thought the point considered was that the astigmatism was for correction of errors in the human eyes, whereas, as appellant points out, Bach had added astigmatism to his front lens so as to make it a surface of revolution, and had cancelled out this astigmatism on the back surface, making the lens stigmatic. The statement of the court in his opinion, to which we have referred, we think shows he understood this.

■■ One other matter is mentioned. Appellant urges that the conclusion against Bach on the basis of obviousness was not based on testimony by anyone qualified to give such an opinion. His brief states this contention as follows: "The defendant did not produce a person skilled in the art to testify as to obviousness," proceeding to the effect that the examiner did not qualify as an expert or as one skilled in the art and was not subject to cross-examination as to qualifications or as to substance. But the examiner is not in the position of a witness. He performs an administrative-adjudicatory function on the basis of the record before him. And since in this case his conclusions are supported by the record, as are those of the District Court on the record there, we find no basis for reversal.[3]

Affirmed.

---

3. See Commonwealth Engineering Co. v. Watson, 110 U.S.App.D.C. 318, 319, 293 F.2d 157, 158.